## SUPREME JUDICIAL COURT,

FOR THE COUNTIES OF

## CUMBERLAND AND OXFORD.

### AUGUST TERM,

### 1820.

---

#### BABB & WIFE *v.* PERLEY.

A husband has no right, by the marriage, to commit waste on his wife's land, though the coverture is a suspension of any *remedy*, at common law, against him.

And if a judgment creditor of the husband extend his execution on the land of the wife, he thereby succeeds to the husband's *legal right* to the rents and profits of the land, but not to his legal *impunity for waste*.

If the creditor in such case injure the inheritance of the wife, as by cutting down and selling the trees, an action on the case lies against him, in which the husband must join.

THIS was an action of *trespass on the case* for an injury done to the interest of the wife, by cutting down and carrying away sundry trees standing on land of which the plaintiffs alleged themselves to be seized in right of the wife.

At the trial of this action before *Wilde J.* at the last *October* term in this county, it was admitted by the defendant that the plaintiffs were seized as alleged in their writ, until he, being a judgment creditor of the husband, extended an execution in his own favor on the *locus in quo*, as the estate of the husband; and it appeared that this extent was made with the formalities of law. After the extent, the defendant cut down, carried away, and *sold* about fifty cords of wood growing on the lot in question.

Upon this evidence the Judge instructed the jury that by virtue of the extent of the execution the defendant acquired all the title of the husband to the *locus in quo*, and that the cutting and selling of the wood was fully justified; and a verdict was

thereupon returned for the defendant, subject to the opinion of the Court upon the correctness of those instructions.

The cause was argued at this term by *Emery* for the plaintiff, and *Longfellow* for the defendant, and the judgment of the Court was as follows.

MELLEN C. J. The facts in this case present some questions, respecting which Judges and Counsellors have taken different views.—They appear somewhat novel and we do not find that they have received any express judicial decision.— We have examined the cause with much attention, and after some vibration of opinion have at length arrived at a result with which we are all satisfied.

The facts reported by the Judge who sat in the trial of the cause led the counsel, in the argument, to the consideration of two questions; and it may be convenient for us to pursue the same course.

The *first* inquiry is, "What were the *rights* and *liabilities* of " *Babb* in virtue of his acquiring a freehold estate in right of his " wife in the land in question, and in consequence of his de-" stroying or selling and disposing of the wood or timber grow-" ing on the land?"

The *second* inquiry is, "What are the *rights* and *liabilities* " of *Perley*, as *assignee* of said *Babb* and owner of his former " interest in the land, in virtue of his ownership and conse-" quent upon *his* destroying or selling and disposing of said " wood and timber?"

With respect to the *first* question, it may now be observed that the land on which the trees were cut by *Perley* is admitted to be a wood-lot, uncultivated, and in a state of nature.

When a man marries a woman who is seized in fee of lands, he thereby gains a freehold in her right.—He acquires a *life estate.* It will be an estate for the *life of the wife only,*—(unless he be tenant by the curtesy) in case he should survive her; or an estate for *his own life,* in case she should survive him; because the law presumes that the coverture will continue until the death of one of the parties.————————"He does not be-" come, by the marriage, absolute proprietor of the inherit-" ance; but as the governor of the family, is so far the master

" of it, as to *receive the profits of it* during her life." *Co. Lit.* 351. 2 *Bl. Com.* 433. *Barber v. Root,* 10 *Mass.* 261. These profits,—this *usufruct* of the wife's lands, the husband may dispose of according to his pleasure, without or against her consent.

For any injury to the annual profits, or for taking away the emblements, the husband may maintain an action against the wrongdoer, in *his own name,* without joining the wife. But for an injury to the *inheritance,* as for cutting down the timber growing on the wife's land, he cannot maintain such action *without joining the wife;* for the damages will survive to her. 3 *Lev.* 403. *Vern.* 82. *Reeves Dom. Rel.* 130. 133.

These cases mark the distinction between the rights of the husband and those of the wife in relation to the lands of which they are seized in *her right.*——If, then, the husband has a right only to the *usufruct* or profits of his wife's lands, the question is, what were the rights which *Babb* had in the land abovementioned, and what control over it? Could this land yield *any profits,* according to the legal signification of the term? Some light may be thrown upon this point, by considering the principles of the decision in the case of *Conner v. Sheppard,* 15 *Mass.* 164. In this case the Court decided that a widow could not by law be endowed of lands in a wild and uncultivated state; and the reason assigned by the Court is, that " of a lot " of wild land, unconnected with a cultivated farm, there *are no* " *rents and profits.*"—Again they say, " In many instances the " inheritance would be prejudiced without any actual ad- " vantage to the widow to whom the dower might be assigned.— " For according to the principles of the common law, her estate " would be forfeited, if she were to cut down any of the trees " valuable as timber.—It would seem too, that the mere change " of the property from wilderness to arable land, or pasture, " might be considered as waste."———" The very *clearing of* " *the land*—would be *actually,* as well as *technically,* waste of the " inheritance."

In the case of *Sargeant & al. v. Towne,* 10 *Mass.* 303. the Court determined that a devise of wild and uncultivated land carried a *fee* without any words of inheritance;—because a *life estate* would be of no use to the devisee.—He *would* not, even

if he *could* without committing *waste,* undertake the cultivation of the land devised.

It would seem from the authorities above cited, that the plaintiff *Babb,* prior to the extent of *Perley's* execution, had no *right* to cut down the timber on his wife's land, or to do those acts which, in the case of a tenant for life, or years, would be *waste.*—It is true *Babb* had the *power* to do it: and so he had the *power* to pull down a house, had there been one on the land; or to beat and wound his wife;—but not the *right* to do this;—because, in the *last* case, he would be indictable for the offence:—and, we believe that a Court of Chancery would prohibit a husband from a wanton destruction of the wife's house or property.——The wife, in all these cases, is destitute of the usual remedy by action for damages against the husband for this or any other injury to her inheritance; because a wife can in no case sue her husband.—The agreement to marry, and the consequent marriage, amount to a *waiver* of this right of action against each other.—This principle is founded on reasons of sound policy. But it does by no means follow that because the husband has the *power* of doing many acts prejudicial to the interest or inheritance of his wife with *impunity,* that he can assign and transfer this power to a *third person,* and give him this privilege of impunity.—In *this* situation of parties policy does not require that this impunity should exist; and therefore it does not exist.

As to the *second* question, we would observe that whatever were the rights and liabilities of *Babb* as husband, those of *Perley* the assignee seem to be more defined and better explained; and if any doubt remain as to *Babb's* rights before the extent of *Perley's* execution, the cause may be decided on this *second* point by the application of principles well settled and understood.

It is admitted that the extent of *Perley's* execution against *Babb,* upon his estate in the land in question, operated to transfer and convey to *Perley* all *Babb's* interest or estate in such land.—It certainly could not convey any more, though it might place the estate in a different situation in respect to *other* persons. Let us then suppose that, instead of this extent, *Babb* had by his deed conveyed to *Perley* all his right, title and in-

terest in and to the land belonging to his wife.—The facts would then present to us no other than the common case of the division of a fee simple estate, into a *freehold* and a *reversion*. The *freehold* or *life estate* would be in *Perley*; and the *reversion* would be in *Babb's* wife; because *Babb,* her husband, had not, and could not have any control over this reversion.—Nothing short of a deed signed by *her* as well as by him could operate to convey it to *Perley.*—The extent has not affected, in any degree, her *reversionary* interest. *Perley*, then, being only *tenant for life* of the land in virtue of the extent of his execution, he could not lawfully commit *waste.*—It would be inconsistent with his estate.

The act complained of is the cutting and carrying away and *selling* about forty cords of wood. Of course, it was an act which a tenant for life has no right to do; it was not for firewood nor fences; it was neither for *building nor repairing.*

In the case before us, *Mrs. Babb,* the reversioner, sues *Perley* for committing this waste on her *inheritance.* Her husband is joined in the action, not because he has any interest; for that has already been legally conveyed to *Perley*; but because a feme covert can never *sue alone,* unless in two or three special cases, forming exceptions to the general rule.—And now, we may ask, why should not the action be maintained? If it should be urged, that it will be prejudicial to the rights of the husband's creditors, by depriving them of the power of converting the lands levied upon to any profitable use; the answer is, the *creditors* of the husband cannot have any more control of the wife's land than the husband *himself* had. The creditors may avail themselves of the *profits* of the wife's land in satisfaction of their demands against the husband; but if there *are no profits*, it is nothing more than the common misfortune of those creditors, whose debtors are insolvent.

The law is consistent and just. It subjects the *land* to the payment of the wife's debts, and the *profits*, to the payment of the debts of the husband. After mature deliberation, we perceive no other mode of deciding this cause without changing the nature of legal estates, and disturbing those principles by which such estates are created and protected.

We are unanimously of opinion that the verdict must be set aside and a new trial granted.